IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-00109-L-BT |
| | § | |
| NEWREZ LLC dba SHELLPOINT | § | |
| MORTGAGE SERVICING, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is Defendant NewRez LLC dba Shellpoint Mortgage Servicing's (Shellpoint) Motion for Summary Judgment (ECF No. 8). For the reasons that follow, the Court should GRANT the Motion and dismiss all Plaintiff's claims with prejudice.

## Background

Plaintiff Kevin Jones and his former wife took out a home equity loan on January 21, 2004. App. Mot. Summ. J. 1, Ex. A-5, at 51-56 (ECF No. 10-1). They signed a note promising to repay the loan and a security instrument granting a lien against their home in Kemp, Texas (the "Property"), to secure repayment. App. Mot. Summ J. 1, Ex. A-6, at 57-70.

The initial lender assigned its interest in the security instrument to GMAC Mortgage, LLC, which then transferred the lender's interest to Green Tree Servicing LLC (later known as Ditech Financial LLC), then to New Residential

1

Mortgage LLC, and finally to Shellpoint. App. Mot. Summ. J. 3, Ex. B-1, at 96-103 (ECF No. 10-3).

Jones divorced his former wife in 2016, and he received her interest in the Property by quitclaim deed. App. Mot. Summ. J. 1, Ex. A-10, at 81-90. Thereafter, while Ditech Financial serviced the loan, Jones and Ditech Financial agreed to modify the loan to cure his default by adding missed payments to the unpaid principal amount. App. Mot. Summ. J. 1, Ex. A-9, at 75-80. The modification brought the loan current through August 2016, increased the unpaid principal balance, and set a new repayment schedule, but did not otherwise change any essential terms of the original security agreement. App. Mot. Summ. J. 1, Ex. A-9, at 76.

Jones had difficulty maintaining full payments after the modification, and the last full, current payment he made was on December 13, 2018. App. Mot. Summ. J. 1, Ex. A, at 14-15. Since this date, he has tendered only two partial payments on February 27, 2019, and on May 1, 2019. App. Mot. Summ. J. 1, Ex. A, at 15-16. After receiving less than required under the terms of the loan agreement, Ditech Financial, sent Jones a default notice on March 4, 2019, and allowed Jones a right to cure the default. App. Mot. Summ. J. 1, Ex. A-16, at 109-20. On July 1,

2019, Ditech Financial returned both payments to Jones as they were "not sufficient to fully reinstate the account."[1] App. Mot. Summ. J. 1, Ex. A-18, at 121.

After the nonpayment and deficient payments, Ditech Financial informed Jones that it was electing to accelerate the maturity of the loan as allowed under the terms of the agreement. App. Mot. Summ. J. 1, Ex. A-6, at 67. On August 13, 2019, Ditech Financial applied for an expedited order of foreclosure under Texas Rule of Civil Procedure 736 by filing with the Kaufman County Texas state court. App. Mot. Summ. J. 2, Ex. A-21, at 141-206 (ECF No. 10-2).

In efforts to discuss loss mitigation and repayment strategies, Shellpoint sent Jones a total of eleven letters to contact the loan servicer over approximately twenty months spanning December 2019 to August 2021.[2] These letters included Shellpoint's contact information and provided information on how to apply for loss mitigation. Jones claims he never saw any of the letters or other communications but noted that the letters were properly addressed to his attorney. App. Mot. Summ. J. 1, Ex. A, at 31, 33-34. After these attempted communications, Shellpoint

---

[1] The terms of the security instrument are explicit in that the "[l]ender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current." App. Mot. Summ. J. 1, Ex. A-6, at 60.

[2] App. Mot. Summ. J. 2, Ex. A-26, at 84-99; App. Mot. Summ. J. 2, Ex. A-28, at 104-06; App. Mot. Summ. J. 2, Ex. A-29, at 107-09; App. Mot. Summ. J. 2, Ex. A-30, at 110; App. Mot. Summ. J. 3, Ex. A-31, at 20-22; App. Mot. Summ. J. 3, Ex. A-32, at 23-25; App. Mot. Summ. J. 3, Ex. A-33, at 26-46; App. Mot. Summ. J. 3, Ex. A-34, at 47-49; App. Mot. Summ. J. 3, Ex. A-35, at 50-70; App. Mot. Summ. J. 3, Ex. A-36, at 71-73; App. Mot. Summ. J. 3, Ex. A-37, at 74-80.

scheduled a foreclosure sale for the Property on October 5, 2021. App. Mot. Summ. J. 3, Ex. A-37, at 79-82.

Jones filed a petition in Texas state court on October 4, 2021, to prevent Shellpoint's foreclosure of the Property. Shellpoint removed this action asserting both federal question and diversity jurisdiction. Removal Notice 2-4 (ECF No. 1). Shellpoint now moves for summary judgment on all of Jones's claims and causes of action. Mot. Summ. J. 1-2 (ECF No. 8). After being granted an extension of time to file a written response, Jones failed to respond to Shellpoint's Motion. Order (ECF No. 12); Notice No Resp. (ECF No. 13). Therefore, the Court considers the Motion without the benefit of a response.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits,

and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)).

The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (Lindsay, J.) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

I.  <u>Jones has abandoned his claims.</u>

Jones did not respond to Shellpoint's Motion. It is well established in this Circuit that "[w]hen a plaintiff fails to defend a claim in response to . . . a summary judgment motion, the claim is deemed abandoned." *See Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *2-3 (N.D. Tex. July 2, 2019) (Lindsay, J.) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (determining

that the plaintiff abandoned his claim by failing to respond to the defendant's supplement to its motion for summary judgment); *see also Cantu v. Freedom Mortg. Corp.*, 2021 WL 356840, at *2 (N.D. Tex. Jan. 4, 2021) (Rutherford, J.), *rec. adopted*, 2021 WL 351409 (N.D. Tex. Feb. 2, 2021).

While such a failure does not permit the court to enter a "default" summary judgment, a court is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Eversley v. Mbank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

Jones failed, after being granted an extension, to respond to Shellpoint's Motion. Thus, the Court should find that he has abandoned all his claims. And even if Jones had not abandoned his claims, he has failed to raise a genuine dispute of material fact with respect to any claim. Accordingly, Shellpoint is entitled to summary judgment. *See Catlett v. Duncanville Indep. Sch. Dist.*, 2010 WL 3467325, at *12 (N.D. Tex. Sept. 2, 2010) (Kinkeade, J.) (citing *Black*, 461 F.3d at 588 n.1 (finding a claim abandoned when plaintiff failed to defend it in response to motion to dismiss)); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (finding plaintiff abandoned claim by failing to contest defendant's arguments for

dismissal of that claim). The District Court should grant Shellpoint's Motion for Summary Judgment and dismiss all Jones's claims with prejudice.

II.    <u>There is no genuine dispute as to any material facts pertinent to Jones's claims.</u>

Jones brought claims asserting (i) demands for declaratory relief, (ii) breach of contract, (iii) violations of the Texas Debt Collection Act (TDCA), (iv) violations of the Texas Deceptive Trade Practices Act (DTPA), (v) breach of common law tort of unreasonable collection efforts, (vi) violations of the Real Estate Settlement Procedures Act (RESPA), (vii) breach of duty of cooperation, (viii) breach of fiduciary duty, and (ix) intentional infliction of emotional distress. Pl.'s Original Pet. 5-15 (ECF No. 1-2). To support each of his claims, Jones alleges that Shellpoint misapplied escrow surplusage, failed to provide notices required under the Texas Property Code, and neglected to consider loss mitigation alternatives. Shellpoint has provided competent summary judgment evidence to conclusively disprove Jones's allegations. And because Jones failed to respond to Shellpoint's Motion, the Court is permitted to accept Shellpoint's evidence as undisputed. Jones's failure to respond means that he has not designated specific facts showing that there is a genuine issue for trial on any of his claims.

> a. *Shellpoint is entitled to summary judgment on Jones's breach of contract claim.*

Shellpoint moves for summary judgment on Jones's breach of contract claim. Jones argues that Shellpoint breached paragraph 3 of the security instrument by failing to provide an accounting for escrow funds held in suspense.

Pl.'s Original Pet. 6. Shellpoint asserts that it complied with all terms of the security instrument and that it provided all required accountings of escrow accounts. Further, Shellpoint points to the lack of evidence of damages to establish that Jones's breach of contract claim fails.

To prevail on a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Hayes v. Bank of Am., N.A.*, 2020 WL 3065936, at *4 (N.D. Tex. May 15, 2020) (Rutherford, J.), *adopted by* 2020 WL 3065520 (N.D. Tex. June 9, 2020). A plaintiff that claims breach of a note or deed of trust must identify the specific provision in the contract that was breached. *Id.*

Here, Jones claims that Shellpoint breached paragraph 3 of the security instrument. The relevant portion of paragraph 3 provides that "[if] there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA." App. Mot. Summ. J. 1, Ex. A-6, at 61. However, Shellpoint points to undisputed evidence demonstrating that no surplus of escrow funds existed while Shellpoint serviced the loan. App. Mot. Summ. J. 3, Ex. A-40, at 84; App. Mot. Summ. J. 3, Ex. A-41, at 85-86. Additional evidence shows that previous loan servicers provided a proper accounting when there was an escrow surplus. App. Mot. Summ. J. 1, Ex. A-19, at 122-23.

Jones also adduced no evidence that he suffered damages as the result of any alleged breach. If a foreclosure has not occurred, there are no damages recoverable under a breach of contract claim. *See Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. Mar. 25, 2011) (holding plaintiff failed to allege damages for breach of contract where no foreclosure occurred, she remained in continuous possession and occupation, and title remained in her name). There is no dispute in this case that Shellpoint has not yet foreclosed on the Property and Jones admitted during his deposition that he suffered no damages. App. Mot. Summ. J. 1, Ex. A, at 46. Consequently, Jones fails to meet his burden to show that a genuine fact issue exists as to damages.

The Court should grant Shellpoint summary judgment on Jones's breach of contract claim because there is no evidence that Shellpoint breached their contractual obligations or that Jones suffered any damages.

> b. *Shellpoint is entitled to summary judgment on Jones's TDCA claim.*

Shellpoint also moves for summary judgment on Jones's claims under the TDCA.

The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). "To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed

a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act." *Flores v. PennyMac Loan Svcs., LLC*, 2019 WL 4720977, at *3 (N.D. Tex. Sept. 4, 2019) (Rutherford, J.), *adopted by* 2019 WL 4691621 (N.D. Tex. Sept. 25, 2019). Jones states that Shellpoint (i) threatened to undertake a wrongful act to sell the Property at a foreclosure sale in violation of Texas Finance Code Section 392.301(a)(8), (ii) used fraudulent, deceptive, or misleading representations that misrepresent the consumer debt in violation of Texas Finance Code Section 392.304(a)(8), (iii) misrepresented the status and nature of services rendered by the debt collector in violation of Texas Finance Code Section 392.304(a)(14), and (iv) used false or deceptive means in violation of Texas Finance Code Section 392.304(a)(19). Pl.'s Original Pet. 7-8.

First, Shellpoint is entitled to summary judgment on Jones's section 392.301(a)(8) claim. This provision prohibits a debt collector from "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). When a lender threatens foreclosure, it does not violate section 392.301(a)(8) if it had the right to foreclose and the loan was in default. *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015) (noting that a mortgagee would not violate section 392.301(a)(8) "if it had retained its *contractual* right to foreclose and the mortgage was in fact in default.") Here, the undisputed evidence demonstrates Jones has been in default since December 13, 2018. App. Mot. Summ. J. 1, Ex. A, at 14-15. The security agreement permits Shellpoint to foreclose in the event of Jones's

10

default. App. Mot. Summ. J. 1, Ex. A-6, at 67-68 ¶ 22. There is no genuine issue of material fact as to Jones's default or that Shellpoint had a right to foreclose on the Property. Therefore, Shellpoint is entitled to summary judgment on Jones's section 392.301(a)(8) claim.

Second, Shellpoint is entitled to summary judgment on Jones's section 392.304(a)(8) claim. This section "prohibits a debt collector from using a fraudulent, deceptive, or misleading misrepresentation that employs certain enumerated practices in attempting to collect a debt or obtain consumer information." *Flores*, 2019 WL 4720977, at *4 (citing Tex. Fin. Code. § 392.304(a)(8)). To qualify as a violation under the TDCA, "the debt collector's misrepresentation 'must have made an *affirmative statement* that was false or misleading.'" *Id.* (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015)). However, Jones's assertions of deception and misrepresentation are rebutted by his own admissions that he has never emailed Shellpoint, telephoned Shellpoint, or reviewed communications. App. Mot. Summ. J. 1, Ex. A, at 46-47. Without Jones pointing to any specific, affirmative statement by Shellpoint that can be construed as evidence of a misleading statement to Jones, Shellpoint is entitled to summary judgment on the section 392.304(a)(8) claim.

Third, Shellpoint is entitled to summary judgment on Jones's section 392.304(a)(14) claim. This provision prohibits a debt collector from "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business." Tex. Fin. Code § 392.304(a)(14). To bring this claim, a

plaintiff must make specific allegations of a misrepresentation that is "fraudulent, deceptive, or misleading." *Anton v. U.S. Bank Nat'l Ass'n*, 2020 WL 6882653, at *9 (N.D. Tex. July 10, 2020). Shellpoint points out the absence of any specific allegation—much less evidence—of a misrepresentation. Moreover, Shellpoint was entitled to foreclose on the Property under the terms of the security instrument. Because there are no facts to support Jones's claim, Shellpoint is entitled to summary judgment on the section 392.304(a)(14) claim.

Finally, Shellpoint is entitled to summary judgment on Jones's section 392.304(a)(19) claim. This "catch-all" provision prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Beam v. Caliber Home Loans, Inc.*, 2021 WL 4445351, at *10 (N.D. Tex. Sept. 7, 2021). As with a section 392.304(a)(8) claim, the misrepresentation must be an affirmative statement that was "false or misleading." *Id.* Jones makes a bare allegation that Shellpoint used "other false representations or deceptive means to collect a debt." Pl.'s Original Pet. 8. However, as established, there is no evidence that Jones ever communicated with Shellpoint, and he does not point to any specific act nor provide evidence that any of Shellpoint's letters could be construed as a misrepresentation. Further, he admits he never looked at the letters. *See* App. Mot. Summ. J. 1, Ex. A, at 46-47. Therefore, Shellpoint is entitled to summary judgment on Jones's claim under section 392.304(a)(19).

Because every basis for Jones's TDCA claim fails as a matter of law, Shellpoint is entitled to summary judgment on judgment on Jones's TDCA claims.

      *c. Shellpoint is entitled to summary judgment on Jones's DTPA claim.*

Shellpoint seeks summary judgment on Jones's claim that Shellpoint has violated the DTPA under the same conduct as the TDCA claim. These alleged acts include seeking to sell the Property at a foreclosure sale and allegedly failing to give proper notices required by Texas law. Pl.'s Original Pet. 8-9.

Under Texas law, the elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)). Thus, a claimant asserting a cause of action under the DTPA must be a "consumer" to have standing. *Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27-29 (5th Cir. 2010). A "consumer" under the DTPA is defined as one who "seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code § 17.45(4). "Goods" include "tangible chattels or real property purchases or leased for use." *Id.* § 17.45(1). "Services" are defined as "work, labor, or service purchases or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* § 17.45(2). "[O]ne who obtains a . . . loan does not obtain a 'good' or 'service' to qualify under the DTPA." *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 854-55 (N.D. Tex. 2006) (citing *Grant-Brooks v. Wilshire Credit Corp.*, 2004 WL 1194462, at *5 (N.D. Tex. 2004)); *see also Rojas*

*v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014) ("Rojas is not a consumer . . . because the basis of her claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction."). Complaints under the DTPA must be about the specific good or service and not about a loan or servicing of a loan because "money is considered neither a good nor a service." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-74 (Tex. 1980)).

In this case, Jones asserts he is a consumer because the "objective in acquiring the Loan from [Shellpoint] was the purchase of [his] home, a good as defined by the DTPA." Pl.'s Original Pet. 9. However, Shellpoint points out that Jones had purchased the home five years prior to taking out the home equity loan. App. Mot. Summ. J. 1, Ex. A, at 4-6. Regardless of Jones's "objective," his main points of disagreement are with the servicing of the loan and loss mitigation communications, Shellpoint's alleged misplacement of payments into an expense account, and the ongoing foreclosure proceedings. Pl.'s Original Pet. 3-4. Jones has not met his burden to specifically identify evidence in the record that supports his claim that he is a consumer. *See Holman v. U.S. Bank, N.A.*, 2018 WL 1472554 (N.D. Tex. Mar. 1, 2018) (Rutherford, J.) (granting summary judgment when plaintiff failed to point to evidence that they were a consumer under the DTPA), *adopted by* 2018 WL 1457248 (N.D. Tex. Mar. 23, 2018). Accordingly, his claim

fails as a matter of law and Shellpoint is entitled to summary judgment on Jones's DTPA claim.

> ### d. Shellpoint is entitled to summary judgment on Jones's unreasonable collections claim.

Shellpoint seeks summary judgment on Jones's claim for unreasonable collection efforts.

Under Texas law, "[u]nreasonable collection is an intentional tort." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. Dec. 29, 2010) (quotation omitted). While the elements are not clearly defined because conduct varies from case to case, to recover on such a claim, the plaintiff generally must show (i) a defendant's debt collection efforts "amount to a course of harassment," (ii) "that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (citing *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415, at \*6 (N.D. Tex. Sept. 7, 2010) (Fitzwater, C.J.)) (internal quotation omitted). Successful claims typically involve plaintiffs who have fully paid or discharged debt and yet are still subject to collection efforts by a creditor, not situations where a plaintiff has defaulted on the loan. *See Pullins v. Credit Exch. Of Dall., Inc.*, 538 S.W.2d 681, 683 (Tex. App.—Waco 1976, no writ) (finding unreasonable collection efforts when the bill had been in fact paid); *Steele*, 2010 WL 3565415, at \*6 (finding no unreasonable collection efforts when plaintiff was in default).

Here, Jones argues that there was an unreasonable "course of conduct in trying to collect a debt without any authority under the security instrument." Pl.'s

Original Pet. 9. Jones asserts that Shellpoint failed to give him a chance to cure the default and goes further to claim that Shellpoint "intentionally delayed" Jones to the point of foreclosure. Pl.'s Original Pet. 9. Moreover, Jones also states that Shellpoint wrongfully charged late fees, other charges, and penalties, which amounts to "deception." Pl.'s Original Pet. 9.

However, Shellpoint provides uncontroverted evidence showing not only that Jones defaulted on the loan but also that they sent Jones at least eleven letters regarding the loan with mitigation procedures; all went unanswered. *See* App. Mot. Summ. J. 1, Ex. A, at 14-15; *supra* note 2. Based on Shellpoint's evidence, there is no question that Jones was in default on the loan. Shellpoint's evidence also shows it was within its rights under the security instrument to seek foreclosure on the Property and to collect the debt owed. App. Mot. Summ. J. 1, Ex. A-5, at 53 ("If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal . . . ."). Further, Jones does not provide any evidence of mental anguish or distress due to Shellpoint's acts. For these reasons, Shellpoint is therefore entitled to summary judgment on Jones's unreasonable collection claim.

> e.  *Shellpoint is entitled to summary judgment on Jones's RESPA claim.*

Shellpoint moves for summary judgment on Jones's claim that Shellpoint violated RESPA.

RESPA is a consumer protection statute that aims to promote transparency and communication between borrowers and lenders. Among other things, the statute sets out specific notice and disclosure requirements with which servicers of federally related mortgage loans must comply. 12 U.S.C. § 2605. Servicers who fail to follow these requirements are liable to borrowers for any actual damages incurred by the borrowers because of such failure. 12 U.S.C. § 2605(f)(1)(A).

Jones alleges that Shellpoint violated 12 C.F.R. § 1024.41(c) because Jones requested loss mitigation options, Shellpoint did not provide loss mitigation options, and Shellpoint posted the Property for foreclosure sale. Pl.'s Original Pet. 12.

Section 1024.41(c) provides that:

[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

(i)   Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii)  Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(i)-(ii).

In this case, Shellpoint provides evidence that it attempted to contact Jones about loss mitigation options at least eleven times over the course of twenty months. *See supra* note 2. Jones admitted in his deposition that he never responded to these letters, and never once contacted Shellpoint, to discuss loss mitigation. App. Mot. Summ. J. 1, Ex. A, at 33-34. The evidence is undisputed not only that Jones never sent a loss mitigation application, but also that Shellpoint in fact tried on multiple occasions to reach out to Jones for loss mitigation alternatives. There is no remaining question of fact to dispute Shellpoint's compliance with their obligations under 12 C.F.R. § 1024.41(c).

Shellpoint also asserts that Jones's RESPA claim must fail because Jones has not suffered any damages. To recover for a violation of RESPA, a plaintiff must show "actual damages to the borrower as a result of the failure." *Wilson v. Deutsche Bank Trust Co. Ams.*, 2020 WL 3452298, at *7 (N.D. Tex. June 24, 2020). Jones contends, in the unsworn petition in state court, that he incurred $200 in out-of-pocket expenses and other lost wages. Pl.'s Original Pet. 12-13. However, Jones later admitted in a deposition that he could not describe any act of Shellpoint that caused any type of damage. App. Mot. Summ. J. 1, Ex. A, at 46. He does not provide any evidence or meet his burden to dispute Shellpoint's evidence that he did not suffer damages. Without any evidence showing Jones suffered actual damages, his RESPA claims fail as a matter of law.

Because there is no dispute of material fact that Shellpoint compiled with RESPA and that Jones suffered no actual damages, Shellpoint is entitled to summary judgment on Jones's RESPA claim.

> ### f. *Shellpoint is entitled to summary judgment on Jones's claim of breach of the duty of cooperation.*

Shellpoint moves for summary judgment on Jones's claim that Shellpoint breached the duty of cooperation.

In Texas, "[a] duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract." *Case Corp. v. Hi-Class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.—Dallas 2005, pet. denied) (citation omitted). "The duty to cooperate is a 'promise that a party will not do anything to prevent or delay the other party from performing the contract.'" *Dick v. Colo. Hous. Enters., L.L.C.*, 780 F. App'x 121, 124 (5th Cir. 2019) (quoting *Tex. Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 698 (5th Cir. 1989)).

Here, Jones avers that Shellpoint breached the duty of cooperation when it "misled [Jones] with oral and written representations regarding the Loan, representations that were untrue." Pl.'s Original Pet. 13. Shellpoint submits the security instrument and Jones's deposition to show that Jones understood his obligations under the contract. App. Mot. Summ. J. 1, Ex. A, at 6; App. Mot. Summ. J. 1, Ex. A-5, at 51-56; App. Mot. Summ J. 1, Ex. A-6, at 57-70. Indeed, Shellpoint points out that it in fact timely attempted to cooperate with Jones numerous times to satisfy the terms of the instrument. *See supra* note 2. Jones also does not provide

any evidence to support the claim that Shellpoint made any untrue representation and therefore Jones does not meet his burden to show a genuine dispute of material fact. Accordingly, Shellpoint is entitled to summary judgment on Jones's claim of breach of the duty of cooperation.

> g. *Shellpoint is entitled to summary judgment on Jones's claim of breach of fiduciary duty.*

Shellpoint also moves for summary judgment on Jones's claim that Shellpoint breached a fiduciary duty.

Under Texas law, to establish a claim for breach of a fiduciary duty, a plaintiff must show "(1) a fiduciary relationship between Plaintiffs and the defendant, (2) a breach by the defendant of its fiduciary duty to Plaintiffs, and (3) an injury to Plaintiffs or a benefit to the defendant as a result of the breach." *Cruz v. NTFN, Inc.*, 2019 WL 2176959, at *5 (N.D. Tex. Apr. 16, 2019) (citing *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.)), *adopted by* 2019 WL 2173446 (N.D. Tex. May 20, 2019). Texas law does not recognize a fiduciary relationship between a lender and a borrower. *See Cruz*, 2019 WL 2176959, at *7; *Campos v. Integrity Mortg. Corp. of Tex.*, 2019 WL 4720337, at *3 (N.D. Tex. Sept. 9, 2019) ("But Texas law does not recognize a fiduciary duty between mortgagor and mortgagee."), *adopted by* 2019 WL 4690716 (N.D. Tex. Sept. 25, 2019).

Jones alleges that the loan documents create a fiduciary relationship where the lender must act in the borrower's best interest, but this is plainly contrary to Texas law. *See Adams v. U.S. Bank, N.A.*, 2018 WL 2164517, at *4 (N.D. Tex. Mar.

6, 2018) ("[T]he relationship between a borrower and a lender [or loan servicer] is an arm's length business relationship in which both parties are looking out for their own interests."). Jones does not provide any facts to support a claim that this is a fiduciary relationship, or that another type of fiduciary relationship exists. Accordingly, Jones's claim fails as a matter of law and Shellpoint is entitled to summary judgment on Jones's claim of breach of fiduciary duty.

> ### h. *Shellpoint is entitled to summary judgment on Jones's claims for intentional infliction of emotional distress.*

Shellpoint moves for summary judgment on Jones's claims for intentional infliction of emotional distress.

To bring a claim for intentional infliction of emotional distress under Texas law, a plaintiff must show that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Strange v. Flagstar Bank, FSB*, 2012 WL 987584, at *5 (N.D. Tex. Mar. 22, 2012) (quotation omitted). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Shellpoint proffers evidence where Jones admits that Shellpoint did not cause him any damage, did not intend to cause him emotional distress, and did not

act with malice towards him. App. Mot. Summ. J. 1, Ex. A, at 46-47. Jones provides no evidence to rebut his admission. Therefore, there is no evidence to support a claim of intentional infliction of emotional distress and Jones is entitled to summary judgment.

### i. Shellpoint is entitled to summary judgment on Jones's declaratory judgment claim.

The Court now turns to Shellpoint's summary judgment motion on Jones's claim that he is entitled to a declaratory judgment from this Court that the "pending foreclosure sale of his Property is wrongful because Defendant failed to properly follow the procedures as set forth in the Security instrument, the Texas Property Code as well as the Texas Constitution." Pl.'s Original Pet. 5-6. Specifically, Jones argues that Shellpoint failed (i) to provide proper notices pursuant to Texas Property Code Section 51.002, (ii) to comply with RESPA regulations incorporated into the security instrument regarding funds in escrow, and (iii) to comply with RESPA requirements for loss mitigation prior to foreclosure. But declaratory relief is a form of relief that depends on the success of the underlying claims. *See Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990). As discussed, Jones has failed to create a genuine fact issue on his claims that Shellpoint's efforts to foreclose on the Property are wrongful, and Shellpoint is entitled to summary judgment on Jones's claims under the Texas Property Code and RESPA. Therefore,

Shellpoint is entitled to summary judgment insofar as Jones seeks a declaratory judgment that "pending foreclosure sale of his Property is wrongful."

> *j.  Jones is not entitled to damages nor attorneys' fees.*

Jones requested an accounting, actual damages, damages for intentional infliction of emotional distress, exemplary damages, and attorneys' fees. Pl.'s Original Pet. 14-15. Because the Court should grant summary judgment in favor of Shellpoint and dismiss Jones's claims, the Court also should grant Shellpoint summary judgment on Jones's claims for damages, other remedies, and fees.

## Recommendation

For the reasons stated, the Court should GRANT Defendant Shellpoint's Motion for Summary Judgment (ECF No. 8) and dismiss Plaintiff Jones's claims with prejudice.

**SO RECOMMENDED.**

**SIGNED ON**: October 7, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

23

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).